UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **PHILIP JOHN REEDY,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-10-2971 |
| § | |
| **CITGO PETROLEUM CORPORATION,** § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendant's Motion to Dismiss (Doc. No. 6) and Motion to Strike (Doc. No. 11). After considering the parties' filings and the applicable law, the Court finds that the motion to dismiss should be granted in part and denied in part, and that the motion to strike should be denied.

## I.   BACKGROUND[1]

Plaintiff Philip John Reedy, who was born in the United States, was employed by Defendant CITGO Petroleum Corporation ("CITGO") for approximately 27 years. CITGO is a subsidiary of PDVSA, the national oil company of Venezuela. Plaintiff began in the cash management department, became a manager of liquidity in 1986, and became the Chief Financial Officer ("CFO") in 2006. During his time at CITGO, Plaintiff was rated as a strong performer and, to his knowledge, never received a negative rating regarding his technical knowledge, work ethic, professionalism, or his dedication to CITGO.

---

[1] Except as noted, these facts are taken from Plaintiff's complaint (Doc. No. 1) and are assumed to be true for purposes of the motion to dismiss. *See Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

1

Alejandro Granado, who is Venezuelan, became the President and Chief Executive Officer ("CEO") of CITGO on May 18, 2007. Thereafter, Plaintiff reported directly to Granado. Plaintiff alleges that, after Granado became CEO, the environment at CITGO changed, and that CITGO began discriminating against non-Venezuelan employees—including Plaintiff—in the terms and conditions of employment. For example, Granado said, "[I]f you are not Venezuelan you are here at our pleasure."

In 2007, Plaintiff, in his position as CFO, was forced to assist with a discriminatory payment plan for the yearly leadership bonus he and other American employees would receive, despite complaining about the practice. Under the bonus plan, Venezuelans were paid in full during the year following the year in which the bonus was earned. The same bonus was paid to Plaintiff and other Americans in installments over multiple years. Americans' bonuses were contingent on continued employment, while no such contingency was required for Venezuelans.

In 2008 and 2009, Plaintiff expressed to Granado, to PDVSA, and to members of CITGO's board of directors his concerns about decisions made and actions taken by Granado. Subsequently, Granado began accusing Plaintiff of being engaged in a "conspiracy." When Plaintiff strongly disagreed with Granado's mischaracterization of his conduct, Granado determined that Plaintiff could no longer continue his responsibilities as CFO. Granado threatened to strip Plaintiff of his responsibilities and give him menial tasks as well as suffer other humiliations for his remaining years at CITGO. Plaintiff was forced to resign from CITGO as a result of the environment Granado created. His employment ended on June 30, 2009, before he was paid his yearly leadership bonus in full.

Plaintiff brings this suit for discrimination on the basis of race and national origin, and retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Texas Commission on Human Rights Act, Tex. Lab. Code, §§ 21.051 and 21.055, and for "reverse discrimination," harassment, and retaliation in violation of 42 U.S.C. § 1981.

## II.   MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendant moves to strike the following statement from Plaintiff's Complaint:

> This discrimination continues most recently with demands that CITGO hire more Venezuelans made by PDVSA's most influential shareholder, the President of Venezuela, Hugo Chavez. In fact, in a televised speech, President Chavez, stated that CITGO's board of directors "must give account here. [CITGO] is not a gringo company."

(Doc. No. 1, ¶ 4.13 (citing Ex. B, Reuters article entitled "Bond issue highlights Venezuela-owned CITGO's woes.")) Defendant also moves to strike the Reuters article, which is attached as Exhibit B to the Complaint. Defendant argues that Chavez's remarks are irrelevant to the claims in the case because they occurred after all of the events at issue and because Chavez has nothing to do with the alleged discriminatory conduct at CITGO. Defendant also argues that including the remarks is prejudicial because they are inflammatory and because Chavez is a controversial figure.

"Generally, motions to strike are viewed with disfavor, as a potentially dilatory tactic." *Puckett v. United States*, 82 F. Supp. 2d 660, 662 (S.D. Tex. 1999) (citing 5A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1380.) As the Fifth Circuit has stated:

3

> Motions to strike are not favored. Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation. If there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied.

*Pan Am. Life Ins. Co. v. Blanco*, 311 F.2d 424, 428 n.13 (5th Cir. 1962) (quoting 2 Moore's Fed. Prac., 2d ed., P12.21(2).) Applying that standard, it would be inappropriate to strike Chavez's comments or the Reuters article at this stage of the case. The Court cannot say with confidence that the comments "can have no possible bearing upon the subject matter of the litigation." Plaintiff may be able to show, after discovery, that the comments are somehow relevant to the claims of the case. Conversely, Defendant may seek to block discovery requests it believes them to be impermissible under the Federal Rules of Civil Procedure, and may object to the admissibility of Chavez's comments at later stages of the case. The Court in no way relies on the disputed material in deciding the motion to dismiss, and sees no prejudice to Defendant in permitting the comments to remain in the complaint. Moreover, the Reuters article is already public. Accordingly, the motion to strike is denied.

### III.  MOTION TO DISMISS

#### A.  LEGAL STANDARD FOR MOTION TO DISMISS

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

4

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009) (internal citation omitted).

### B. ANALYSIS

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Defendant moves to dismiss Plaintiff's claims on several grounds. The Court will address each of these arguments in turn.

### 1. Citizenship Versus National Origin Discrimination

Defendant argues that Plaintiff's national origin claim should be dismissed because courts do not recognize claims for discrimination based on "citizenship," and Plaintiff has only alleged discrimination on the basis of his American citizenship. (Doc. No. 6, at 6-7.) Whereas Title VII explicitly bans discrimination on the basis of national origin, citizenship-based discrimination is not necessarily prohibited. *See, e.g.*, *Fortino v. Quasar Co.*, 950 F.2d 389, 392 (7th Cir. 1991) ("Title VII does not . . . forbid discrimination on grounds of citizenship.") (citing *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86 (1973)) Moreover, "[a]lthough citizenship and national origin may be highly correlated, they should not be equated with one another . . . ." *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998).

In this case, however, Plaintiff specifically alleges that he was discriminated against on the basis of his national origin, and states that he "was born in the United States of America." Courts have permitted claims for national origin discrimination brought by people who were born in the United States. *See, e.g.*, *Chaiffetz v. Robertson Research Holding, Ltd.*, 798 F.2d 731, 733 (5th Cir. 1986) ("employment discrimination based only on one's country of birth, whether that birthplace is the United States or

6

elsewhere, contradicts the purpose and intent of Title VII") (citation omitted). The fact that Plaintiff sometimes uses the word "American" in his complaint does not change his national origin claim to a citizenship claim. The Court finds it both just and logical to construe the references to "American" employees as referring to employees born in the United States. *See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001) ("When deciding a motion to dismiss under Rule 12(b)(6), the district court must accept the plaintiff's factual allegations as true and resolve doubts as to the sufficiency of the claim in the plaintiff's favor.") Accordingly, Defendant's motion to dismiss on this basis is denied.

## 2. Discrimination on the Basis of Race

In addition to national origin discrimination, Plaintiff alleges discrimination on the basis of race. However, nowhere in the complaint does Plaintiff identify his own race.[2] Nor does he make any allegations that any racial discrimination occurred, beyond the statements about "American" employees being treated differently. The Supreme Court has explained that, in prohibiting racial discrimination in 42 U.S.C. § 1981, "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics," rather than based "solely on the place or nation of [their] origin, or [their] religion." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Although race and national origin are "[o]ften . . . identical as a factual matter" because "one was born in the nation whose primary stock is one's own ethnic group," *id.* at 614 (Brennan, J., concurring), that is not the case for people born in the United States, a diverse country comprising people of countless ancestries and ethnic characteristics.

---

[2] Plaintiff does, in his response to the motion to dismiss, state that he is Caucasian.

7

Accordingly, Plaintiff's allegations of "Americans" being mistreated cannot be read as stating a claim for race-based discrimination. Defendant's motion to dismiss is granted with respect to the Section 1981 claims and with respect to the claims under Title VII and the TCHRA for discrimination on the basis of race. The Court will allow Plaintiff leave to amend his complaint to cure this deficiency.

### 3. Hostile Work Environment

"A plaintiff may establish a Title VII violation based on [national origin] discrimination creating a hostile work environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). In order to do so, the plaintiff must prove:

> (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on [national origin]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Id.* "For harassment to affect a term, condition, or privilege of employment, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Smith v. Harvey*, 265 Fed. App'x 197, 202 (5th Cir. 2008) (per curiam) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. To qualify as "hostile or abusive," a work environment must be one that "a reasonable person would find hostile or abusive" and that the victim "subjectively perceive[s] . . . to be abusive." *Id.* at 21.

Defendant argues that Plaintiff has failed to allege sufficient facts to support a discrimination claim based on a hostile work environment. Plaintiff's allegations of a hostile work environment essentially consist of: 1) Granado made harassing comments such as "if you are not Venezuelan you are here at our pleasure," Doc. No. 1, ¶ 4.12; 2) CITGO implemented a structure for payment of leadership bonuses in which Venezuelan employees received their entire bonus during the year following the year in which the bonus was earned, while American employees received the bonus over the course of several years, *id.*, ¶¶ 4-14-4.21; and 3) when Plaintiff complained about discriminatory actions and other decisions at CITGO, "Granado threatened to strip Reedy of his responsibilities and give him menial tasks as well as suffer other humiliations for his remaining years as CITGO," *id.*, ¶ 4.26.

The Court finds that Plaintiff has alleged sufficient facts to state a claim of the existence of a hostile work environment. Plaintiff alleges several incidents in very specific detail, including Granado's comment and the different bonus structures, and also alleges that there were multiple instances of those types of events. Plaintiff need not specifically state each comment he alleges to have been made. *See Twombly*, 550 U.S. at 555 ("a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"). Rather, he is required only to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Plaintiff has done so here with regard to his claim of a hostile work environment, by alleging facts that, if proven true, would constitute sufficiently severe or pervasive harassment to create a hostile or abusive work environment. Accordingly, Defendant's motion to dismiss on this basis is denied.

9

### 4. Constructive Discharge

"A resignation is actionable under Title VII, allowing the plaintiff to seek compensatory damages for events after the resignation, only if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* (citation omitted). Whether that standard is met depends on the facts of each case, but the following factors are relevant:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Brown*, 237 F.3d at 566.

In this case, Plaintiff alleges that several of the relevant factors are present. He alleges that Granado demoted Plaintiff and reduced his job responsibilities by removing him as CFO. (Doc. No. 1, ¶ 4.25.) He alleges that he was reassigned to menial and humiliating work. (*Id.*, ¶ 4.26.) He alleges that Granado badgered and harassed him by accusing him of being engaged in a conspiracy. (*Id.*, ¶¶ 4.24 and 4.26.) If proven true, these allegations could amount to working conditions "so intolerable that a reasonable employee would feel compelled to resign." *Brown*, 237 F.3d at 566. Accordingly, Defendant's motion to dismiss on this basis is denied.

### 5. Retaliation

Title VII makes it an unlawful employment practice for an employer:

> to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Gee*, 289 F.3d 342, 345 (5th Cir. 2002) (citation omitted). Plaintiff argues that he was subjected to adverse employment actions as retaliation for complaining about CITGO's alleged discriminatory practices. Defendant argues that Plaintiff has failed to prove the second and third prongs.

#### a. Adverse Employment Action

With regard to the second prong, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The Court in *Burlington Northern* distinguished "materially adverse" actions from "trivial harms," "petty slights," and "minor annoyances." *Id.* at 68. The Court also noted that "[c]ontext matters," and "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69; *see also id.* ("an act that would be immaterial in some situations is material in others") (citation omitted).

In this case, Plaintiff alleges that Granado harassed him by accusing Plaintiff of being engaged in a conspiracy. (Doc. No. 1, ¶ 4.24.) He also alleges that Granado took

11

away his CFO responsibilities, and threatened to instead give him menial and humiliating tasks. (*Id.*, ¶¶ 4.25, 4.26.) If these allegations are proven true, they would constitute an adverse employment action that might well have dissuaded a reasonable employee from complaining about discrimination. *See, e.g., Kessler v. Westchester County Dept. of Social Services*, 461 F.3d 199, 209-10 (2d Cir. 2006) (finding genuine issues of material fact where employee was transferred, stripped of responsibilities, and forced to do clerical work). Accordingly, Plaintiff has sufficiently alleged the second prong of the *prima facie* case for retaliation.

### b. Causal Link

With regard to the third prong, "a 'causal link' is established when the evidence demonstrates that the [adverse action] was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (citation omitted). "Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of his protected activity." *Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003). However, "[t]he plaintiff need not prove that [his] protected activity was the sole factor motivating the employer's challenged decision" in order to meet this burden. *Gee*, 289 F.3d at 345.

In this case, the Court finds that Plaintiff has sufficiently alleged a causal connection between his protected conduct and the adverse employment actions. First, Plaintiff alleges that the retaliatory conduct occurred shortly after his protected conduct. Temporal proximity alone, if sufficiently close, can prove a causal connection. *Swanson v. General Services Admin.* 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between

12

an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation."); *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 995 (5th Cir. 2005) ("surely the less than 60 day period that elapsed here between the protected activity and an adverse action would have been sufficient for [the plaintiff] to demonstrate a causal connection, and survive summary judgment"). Second, Plaintiff alleges that Granado's actions were taken as a response to Plaintiff's complaints about discrimination. Prior to discovery, Plaintiff cannot be expected to know every detail that tends to prove his claims. Here, he has presented reasonably detailed allegations that, if proven true, would demonstrate a causal link and satisfy the third prong of the *prima facie* case of retaliation. Accordingly, Plaintiff has sufficiently alleged retaliation, and Defendant's motion to dismiss on this basis is denied.

### 6. Failure to Exhaust Administrative Remedies

Finally, Defendant argues that Plaintiff's claims of disparate impact, a hostile work environment, and race discrimination should be dismissed because Plaintiff did not exhaust administrative remedies with regard to those aspects of his claims. "The filing of an administrative complaint is a prerequisite to a Title VII suit." *Thomas v. Atmos Energy Corp.*, 223 Fed. App'x 369, 376 (5th Cir. 2007) (per curiam); *Pacheco v. Mineta*, 448 F.3d 783, 788 and n.6 (5th Cir. 2006). "A Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the

initial charges of discrimination." *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

### a. Material to be Considered

In his complaint, Plaintiff alleges that he "has exhausted all applicable administrative remedies and on May 26, 2010, received the Dismissal and Notice of Right to Sue letter from the EEOC. This lawsuit has been filed within 90 days of his receipt of the Dismissal and Notice of Right to Sue letter." (Doc. No. 1, ¶ 3.3.)[3] Plaintiff attached the Right to Sue Letter as an exhibit to the complaint, and includes as exhibits to his response brief several documents from the EEOC proceedings. Defendant submitted Plaintiff's EEOC charge as an attachment to its motion.

Plaintiff argues that, by relying on the EEOC charge, Defendant converts its motion into one for summary judgment. Plaintiff also requests an opportunity to obtain his entire EEOC file in admissible form, in order to show the parameters of the

---

[3] The Court doubts that it was necessary for Plaintiff to have specifically alleged administrative exhaustion in his complaint. "[E]xhaustion of administrative remedies in a Title VII case is not a jurisdictional prerequisite to suit but a requirement that is subject to waiver, estoppel and equitable tolling." *Konnethu v. Harris County Hosp. Dist.*, 669 F. Supp. 2d 781, 792 n.37 (S.D. Tex. 2009) (citing *Womble v. Bhangu*, 864 F.2d 1212, 1213 (5th Cir. 1989) and *Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982)); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (holding that "threshold number of employees for application of Title VII is an element of plaintiff's claim for relief, not a jurisdictional issue"). The Supreme Court also held in *Jones v. Bock*, 549 U.S. 199 (2007), that, in the context of the Prison Litigation Reform Act, failure to exhaust administrative remedies "is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216; *see also Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, 2010 WL 565283, at *2 (S.D. Tex. Feb. 17, 2010) ("A complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense."). Applying *Jones*, the Fifth Circuit has held that, in the Employee Retirement Income Security Act context, exhaustion is an affirmative defense that need not be pled in a complaint. *Wilson v. Kimberly-Clark Corp.*, 254 Fed. App'x 280, 286-87 (5th Cir. 2007) (per curiam), and other courts have done the same in the Title VII context. *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997); *DiPetto v. U.S. Postal Service*, 383 Fed. App'x 102, 104 (2d Cir. 2010) (summary order); *Howard v. Gutierrez*, 571 F. Supp. 2d 145, 152 (D.D.C. 2008); *Williams v. Doyle*, 494 F. Supp. 2d 1019, 1029 (W.D. Wis. 2007); *Schultz v. Windstream Communications, Inc.*, 2008 WL 2773974, at *2-3 (D. Neb. July 14, 2008) (suggesting without deciding that Title VII plaintiffs need not specifically allege exhaustion); *but see Martinez v. Target Corp.*, 384 Fed. App'x 840, 844-45 and n.2 (10th Cir. 2010) (distinguishing *Jones* based on differences between PLRA and Title VII). The Court need to rule on this issue, however, because, even if Plaintiff is required to plead administrative exhaustion, he has done so sufficiently.

investigation conducted by the EEOC. If, on a motion to dismiss under Rule 12(b)(6), the Court considers matters outside the pleadings, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). A court can, however, consider matters of public record when deciding a motion to dismiss, *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000). It may also consider attachments to the pleadings as well as documents attached to the motion to dismiss, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000).

A number of courts have considered EEOC charges in deciding motions to dismiss, either on the grounds that they are matters of public record or that they are central to the claims and referenced in the complaint. *See, e.g. Willie Bowers v. Edgewood Independent School Dist.*, 2005 WL 2648332, at *3 (W.D. Tex. Oct. 4, 2005); *McCray v. Dolgencorp of Texas, Inc.*, 2005 WL 1131173, at *1 n.2 (N.D. Tex. May 9, 2005); *Wilson v. Lockheed Martin Corp.*, 2003 WL 22384933, at *2 (E.D.La. Oct. 15, 2003). Still, the court is hesitant to consider the EEOC charge with the motions to dismiss in this case, because although the charge is *related* to allegations in Plaintiff's complaint, the document itself is not *referenced* in the complaint. Interpreting "referenced in the plaintiff's complaint" broadly enough to include the charge would potentially allow defendants to rely on a wide array of documents related to a plaintiff's allegations—much as they would at the summary judgment stage—before a plaintiff had any opportunity for discovery. Furthermore, in this case, Defendant has not provided the Court with the entire EEOC investigative file, and Plaintiff specifically requests an opportunity to obtain the remainder of the file before the Court rules on the motion to dismiss. However, assuming

15

for the sake of argument that the Court may consider the EEOC charge and the documents from the EEOC proceeding submitted by Plaintiff, the Court finds that Defendant's motion to dismiss for failure to exhaust administrative remedies should be denied.

### b. Analysis

First, Defendant argues that Plaintiff failed to administratively exhaust his claim for "disparate impact" discrimination. "A disparate-impact plaintiff must show (1) a facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class." *Pacheco*, 448 F.3d at 791. Reading Plaintiff's EEOC charge "somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger," *id.* at 792, the Court finds that Plaintiff sufficiently raised the issue of disparate impact at the administrative level. The EEOC charge refers to the policy in which Venezuelan employees of PDVSA are paid their bonuses during a single year, while American employees of CITGO receive their bonuses over several years. (Doc. No. 6-1, at 2.) In his Response to CITGO's Position Statement, sent on November 13, 2009, Plaintiff (through his counsel) discussed "the disparate impact on non-Venezuelan employees" created by the bonus policy, on the grounds that most PDVSA executives were Venezuelan, while most CITGO employees were non-Venezuelan. (Doc. No. 9-1, Ex. 2, at 3.) Thus, the Court finds that Plaintiff administratively exhausted his disparate-impact claim.

Second, Defendant argues that Plaintiff failed to administratively exhaust his claim based on a "hostile work environment." While it is true that Plaintiff did not use the term "hostile work environment" in his EEOC charge, he was not required to use those

precise words. *See Pacheco*, 448 F.3d at 792 ("we do not require that a Title-VII plaintiff check a certain box or recite a specific incantation to exhaust his or her administrative remedies"); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) ("In the context of a statute like Title VII it is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations."). Plaintiff did include in the EEOC charge references to conduct he alleges contributed to the hostile work environment, including the variant bonus-payment plans, statements by CITGO executives such as "if you are not Venezuelan you are here at our pleasure," accusations that Plaintiff was engaged in a conspiracy, and a determination that Plaintiff should retire. Thus, the Court finds that a hostile work environment claim could reasonably have been expected to grow out of his EEOC charge, so Plaintiff adequately exhausted his administrative remedies on that issue.

Finally, Defendant argues that Plaintiff failed to administratively exhaust his claim for race discrimination, arguing that the EEOC charge referred only to national origin discrimination. Because the Court found that Plaintiff has not stated a claim for race discrimination, however, it need not decide the exhaustion issue at this time. The motion to dismiss on that basis is denied without prejudice to renewal if Plaintiff amends his complaint in an attempt to state a claim for race discrimination.

## IV.    CONCLUSION

For the reasons described in this order, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss. Plaintiff may file an amended complaint within twenty (20) days that cures the deficiencies identified here.

**IT IS SO ORDERED**.

**SIGNED** this 28th day of February, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE